James E. Goodley (NY Reg. No. 5724083)
Ryan P. McCarthy*
GOODLEY MCCARTHY
1650 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 394-0541
james@gmlaborlaw.com
ryan@gmlaborlaw.com
*Attorneys for Plaintiff*
*\* Pro Hac Vice Application to be Filed*

## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| DAVID REGUEIRO | : | |
| | : | |
| Plaintiff, | : | Case No.: |
| | : | |
| v. | : | |
| | : | |
| GALAXY RESTAURANTS | : | |
| CATERING GROUP, LP d/b/a | : | |
| CONSTELLATION CULINARY | : | JURY TRIAL DEMANDED |
| GROUP | : | |
| | : | |
| and | : | |
| | : | |
| CBRE, Inc. | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT

## PRELIMINARY STATEMENT

1.     This is an action against Defendants for unlawful discrimination based on sex and

sexual orientation, sexual harassment, hostile work environment, quid pro quo sex discrimination,

and unlawful retaliation in violation of the New York State Human Rights Law, N.Y. Exec. Law

§ 290 *et seq.* ("NYSHRL") and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-

101 *et seq.* ("NYCHRL").

**JURISDICTION AND VENUE**

2.    This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

3.    Plaintiff's damages in this matter, exclusive of interest and costs, exceed $75,000.

4.    Pursuant to 28 U.S.C. § 1391, venue lies in this District because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District and because Defendants conduct business in this District.

**PARTIES**

5.    Plaintiff David Regueiro is an adult individual residing in Montrose, New York. Regueiro was employed by Defendant Constellation Culinary Group as a Regional Executive Chef from approximately October 19, 2019 through approximately August 2021 when he was constructively discharged in retaliation for making internal reports of sex discrimination, harassment, and hostile work environment to Constellation and CBRE management and human resources personnel.

6.    Defendant Galaxy Restaurant Catering Group, LP d/b/a Constellation Culinary Group ("Constellation") is a Delaware limited partnership headquartered in Philadelphia, Pennsylvania.

7.    Defendant Constellation provides daily on-site dining and culinary services for corporate clients in New York City and throughout the United States.

8.    Constellation's website states, "At Constellation Culinary Group, we believe you should never have to leave work to enjoy a quality meal.  Grab a coffee, enjoy or a lunch, or wow a client – all right on the premises.  We offer delicious, restaurant-quality food provided by a team of friendly faces in your office, every single day."[1]

---

[1] *See* https://constellationculinary.com/professional-dining/ (last accessed March 2, 2022)

9.      Defendant CBRE, Inc. ("CBRE") is a Delaware corporation headquartered in Los Angeles, California.

10.     Among other things, CBRE provides its clients, businesses that occupy commercial spaces, with property and facilities management services.

11.     As of December 31, 2021, CBRE managed approximately 4.4 billion square feet of facilities on behalf of its clients.

**FACTS**

12.     At all times relevant to this Complaint, CBRE provided property management or global workplace solutions services to its client, Macquarie Group ("Macquarie"), for Macquarie's offices at 125 West 55th Street, New York, New York ("New York Office") and 100 Independence Mall, Philadelphia, Pennsylvania ("Philadelphia Office").

13.     At all times relevant to this Complaint, Defendant CBRE contracted Defendant Constellation to provide the on-site culinary services at Macquarie's New York Office.

14.     The CBRE on-site executive and point of contact for Constellation and its employees providing culinary services at Macquarie's New York Office was Paul Albanese, Senior Workplace Experience Manager at CBRE.

15.     Albanese had significant authority at CBRE and was an agent of CBRE.

16.     Albanese directly oversaw and supervised the work of Constellation employees, including Regueiro, at Macquarie's New York Office.

17.     Constellation employees, including Regueiro, who were to be hired by Constellation to provide culinary services at Macquarie's New York Office, were first interviewed by Albanese, who had the ultimate authority to approve or disapprove of any Constellation employees who worked at Macquarie's New York Office.

18.     Through his position and CBRE's relationship with Constellation, Albanese had (and exercised) authority to hire, fire, and grant or authorize raises to Constellation employees who worked at Macquarie's offices.

19.     Regueiro began his employment with Constellation in or around October 18, 2019. Upon hire, Regueiro's title was Regional Executive Chef. In this position, he would oversee the culinary services provided at Macquarie's New York Office and the soon-to-be-opened Philadelphia Office.

20.     Regueiro was qualified for his job. Prior to working for Constellation, Regueiro obtained a culinary degree and worked for 10 years for Restaurant Associates (a large contract food service company). While at Restaurant Associates, Regueiro provided culinary services to an Am Law 100 Firm, a large corporation, and a world-renowned music hall in New York City.

21.     Regueiro, as the Regional Executive Chef for Constellation at Macquarie's New York Office, created the food menus, prepared the food served on site, and oversaw the work of his *sous* chef, Hector, eight (8) other chefs, and a number of servers and baristas.

22.     Except for the unlawful discrimination and sexual harassment described herein, Regueiro enjoyed his work for Constellation.

23.     Starting in or around July 2020, Albanese subjected Regueiro to a hostile work environment based on sex and sexual orientation, and sexually harassed Regueiro on a consistent basis.

24.     Constellation and CBRE were aware of and tolerated Albanese's inappropriate behavior towards Regueiro, despite Regueiro's numerous complaints to Constellation human resources and higher management personnel regarding Albanese's inappropriate workplace behavior.

25.     Albanese, who exercised significant authority over Regueiro in the workplace, relentlessly attempted to engage in unwelcomed and inappropriate conversations of a sexually explicit nature with Plaintiff, which Plaintiff, as a married heterosexual man, refused to engage in and attempted to avoid to the best of his ability.

26.     For example, Albanese consistently attempted to discuss penis sizes with Regueiro and would show Regueiro pornographic materials in the workplace. Plaintiff expressed that he did not want to see the pornographic materials.

27.     Regardless of the topic of discussion, whether it was about something as innocuous as apples or steak to be served on the food menu, Albanese would turn the conversation with Regueiro into something sexual.

28.     Albanese often told Regueiro about his long nights of sex and drinking the night before.

29.     Despite his awareness that Regueiro was a straight, married man, Albanese constantly suggested to Regueiro that he should try having sex with men.

30.     Albanese constantly showed Regueiro his profile on Grindr, a well-known "hook-up" application for gay men, discussing the types of men Albanese enjoyed having sex with. Regueiro expressed to Albanese that he wanted to no part in these discussions.

31.     On one particular morning in or around March 2021, Regueiro was in the kitchen preparing chicken soup when Albanese entered the kitchen complaining that he was hungover from a long night of alcohol drinking and sex.  Trying to keep the conversation non-sexual and workplace appropriate, Regueiro responded that he was preparing chicken soup, which may help with the hangover. Albanese responded to Regueiro: All I want in my mouth is your cock and your

cum. This is but one (1) example of the many sexually explicit comments Albanese expressed to Regueiro in the workplace.

32.     Regueiro opposed Albanese's comment, stating all that is available is the chicken soup.

33.     Regueiro was very uncomfortable by Albanese's inappropriate behavior and comments. Regueiro did his best to ignore and avoid Albanese and his comments.

34.     Regueiro reported this incident to a manager at Constellation, Shirley Miller, who laughed it off, saying something to the effect of, "oh, that's just Paul." This was a common phrase at Constellation and CBRE regarding Albanese's inappropriate workplace behavior and comments. Constellation Vice President of Operations David Adler and others used this phrase to describe Albanese's behavior.

35.     Upon information and belief, Miller did not report Regueiro's complaint to Constellation human resources or higher management, as was required by Constellation human resources procedures. As a result, Albanese's sexual harassment persisted.

36.     Albanese told Regueiro that he wanted to promote Regueiro to be Macquarie's Executive Chef for all of North America. In this position, which would include a significant pay raise, Regueiro would oversee food and menu coordination at Macquarie offices across the continent.

37.     Albanese even directed Shirley Miller to find a photographer to take professional photos of Regueiro in his chef jacket, in anticipation of this significant promotion.

38.     In or around August 2020, Regueiro spent the entire day having his picture taken in Macquarie's kitchen and around the City, in preparation for the announcement that he would be named Executive Chef of North America. Albanese directed the photo shoot.

39.     However, right around the same time, Albanese's sexual advances towards Regueiro increased. Albanese was constantly hitting on Regueiro in the workplace. He commented on Reguiero's penis size, saying something to the effect of, I'm sure you're more "hung" than me, and maybe one day I'll get the chance to see.

40.     Albanese also engaged in inappropriate touching. Albanese would touch Plaintiff's shoulder, the nape of his neck, and then run his hand down Regueiro's back. Albanese would find any excuse to touch Regueiro, e.g., to comment on the fabric of Reguiero's clothing.

41.     Regueiro attempted to avoid Albanese's touching by stepping back or away from Albanese. Eventually though, Regueiro would try to leave the room whenever he saw Albanese was entering, in order to avoid the sexually harassing comments and touching entirely.

42.     Regueiro soon realized that the promotion to Executive Chef of North America was conditioned on Regueiro engaging in a sexual relationship with Mr. Albanese.

    a.  In addition to Mr. Albanese's inappropriate sexual comments and advances, Regueiro's understanding that the promotion was a *quid pro quo* exchange was informed by the *quid pro quo* sexual relationship between Albanese and Regueiro's *sous* chef, Hector.

    b.  Albanese authorized Constellation to provide a $20,000.00 raise to Hector just a few weeks after Hector started his employment with Constellation, because Hector had engaged in a sexual relationship with Albanese.

    c.  Hector admitted this and showed Regueiro sexual pictures that he and Albanese would exchange on their smart phones.

d.  Constellation management was aware of the sexual relationship between Albanese and Hector, and upon information and belief, Constellation conducted an internal investigation regarding the propriety of the $20,000.00 raise.

43.  After Regueiro continued to deny Albanese's constant sexual advances and comments, and Albanese realized Regueiro would not engage in a sexual relationship with him, Albanese not only revoked the promotion opportunity, but also sought to terminate Plaintiff's employment and find a replacement for the Regional Executive Chef position.

44.  In addition to the sexual harassment, Albanese now began incessantly bullying Regueiro and criticizing Regueiro on a constant basis.

45.  Despite not having any previous problems with Regueiro's work performance or cooking abilities, Albanese began criticizing Regueiro on the food he made and constantly threatened Regueiro's employment.

46.  Albanese yelled and screamed at Regueiro, telling him the food he made was, e.g., too brown, too spicy, too bland, too cold, and more.

47.  Albanese also began to impose new impossible work requirements on Regueiro. For example, whenever Regueiro was to add a new food item to the menu, Albanese now demanded that Regueiro prepare for Albanese, personally, a Power Point presentation explaining *each ingredient* that would be included in the dish, as well as the source (or farm) of each ingredient.  Regueiro was required to create dozens of food menu items per day, so this task was unworkable and designed to harass Regueiro.

48.  Hector told Regueiro that his life would be much easier if Regueiro also went "gay for pay" and if he would just send Albanese sexual pictures of himself like Hector did. To Regueiro, a heterosexual married man, this was not an option.

49. Going to work every day, where he knew he would have to deal with Albanese's constant sexual harassment, screaming and bullying, became a living hell for Regueiro. Albanese's severe and pervasive bullying and sexually explicit behavior caused Regueiro stress, anxiety, mental anguish, the inability to sleep at night, loss of enjoyment of life and its daily activities, and more.

50. When a new Constellation Regional General Manager, Stephen Mule, arrived at the Macquarie New York Office in or around May 2021, one the first things Albanese told Mule was to fire Regueiro. The only reason Albanese wanted Regueiro fired was because he refused to engage in a sexual relationship with Albanese.

51. However, Regueiro told Mule and Constellation Vice President of Operations David Adler about being constantly subjected to Albanese's inappropriate sexual comments, bullying, and sexual harassment.

52. Mule refused to terminate Regueiro's employment, stating to Regueiro that there is not one thing that Regueiro was doing wrong. Mule also told Adler that there was no reason to terminate Regueiro's employment, and Adler agreed.

   a. The first day Regueiro met with Mule, which was Mule's first day at the New York Office, Regueiro showed Mule the kitchen, the menus, and the general lay of the land regarding Constellation's food services at Macquarie.

   b. Mule told Regueiro that he has a "target on his back," because Albanese requested to Mule that he fire Regueiro.

   c. Mule told Regueiro that he was not going to fire Regueiro because, from what he could tell based on his review, Regueiro was doing a good job.

9

d.  Regueiro then told Mule about Albanese's inappropriate relationship with Hector and Albanese's constant inappropriate sexual harassment and bullying of Regueiro.

e.  Mule was shocked, and immediately called David Adler to report what Regueiro had just old him regarding Hector and Albanese's sexual harassment and bullying behavior.

53.     Through Regueiro (and other Constellation employees') internal complaints about Albanese's highly inappropriate workplace comments and behavior, Adler and Mule knew about Albanese's inappropriate treatment of Regueiro and knew that Albanese (not Regueiro) was the problem.

54.     Still, Mule and Adler refused to take any action to remedy the hostile work environment and sexual harassment their employee, Regueiro, was being subjected to on a daily basis.

55.     Upon information and belief, Adler and Mule refused to take any action because it could potentially upset the business relationship between Constellation and CBRE. CBRE, the largest commercial property manager in the world, was an important client for Constellation. Of course, this is no defense to Constellation's failure to act.

56.     CBRE was also aware of Albanese's treatment of Regueiro, but chose to do nothing. Regueiro reported Albanese's inappropriate behavior and sexual harassment to Lindsay Kertesz, Senior Workplace Experience Manager at CBRE, but she stated that she was just going to play dumb and pretend that she never had the conversation.

57.     When Regueiro returned from a much-needed vacation in or around July 2021, Mule and Adler informed Regueiro that Albanese was actively interviewing a replacement for Regueiro. In fact, Albanese was interviewing a friend of Hector for the position.

58.    Mule and Adler again told Regueiro that there was no reason to terminate his employment, but Albanese was insisting upon Constellation that Regueiro be terminated and replaced.

59.    At this point in time, after his reports of sexual harassment went nowhere with Miller, Mule, Adler and Kertesz, Regueiro decided to bring his complaints about Albanese directly to Constellation human resources.

60.    In or around July-August 2021, Regueiro had multiple phone conversations with Constellation human resources manager Nancy Dupuy regarding the sexual harassment and bullying he was subjected to by Albanese, as well as the apparent plan to terminate and replace Regueiro.

61.    Regueiro told Dupuy about the daily harassment, bullying, inappropriate sexual comments, and communicated to Dupuy that the hostile work environment fostered by Albanese was causing him stress, anxiety, and more. Dupuy stated she was shocked by how incredibly bad things were for Regueiro at Macquarie's New York Office.

62.    Dupuy made clear though that neither she nor anyone at Constellation was going to take any action to remedy the hostile work environment Regueiro was forced to work in every day.

63.    Both Dupuy and Adler told Regueiro that he would likely be happier and better off if he simply resigned from Constellation.

64.    Rather than address the situation, Dupuy and Adler offered Regueiro chef positions with Constellation at different locations that paid $50,000 and $30,000 less, respectively, than Regueiro's current position at Macquarie's New York Office.

65.    Regueiro found it insulting and wrong that Constellation management and human resources' only response to his complaints of sexual harassment and hostile work environment was that he could either quit or accept an offer to be paid $50,000 less per year.

66.    Regueiro found the treatment by Albanese and Constellation's guidance to quit or take a lower paying position so intolerable that he was forced to quit.  Regueiro realized that he no longer had a future with Constellation and that he had no choice but to quit.

67.    Regueiro was constructively discharged because he reported Albanese's sexual harassment and hostile work environment to Constellation management and human resources, and their only response was to relocate Regueiro to a lower paying position or resign.

68.    In or around August 2021, Regueiro resigned from Constellation.

69.    Defendants' unlawful retaliation, as well as their conduct engaging in or permitting sexual harassment and other discrimination at the workplace as described herein, was willful, wanton, and malicious.  Despite being placed on notice concerning allegations of clear violations of the NYSHRL and NYCHRL, Defendants disregarded these allegations to further their economic and business interests.

## <u>COUNT I</u>
### NYSHRL Sexual Harassment and Sexual Orientation Harassment
### Regueiro v. Constellation and CBRE

70.    Plaintiff hereby repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

71.    Defendants Constellation and CBRE discriminated against Regueiro on the basis of his gender and sexual orientation by subjecting Regueiro to sexual harassment and a hostile work environment, through the actions of Paul Albanese, and the inaction of Constellation and

CBRE management and human relations personnel in the face of repeated complaints by Plaintiff.

72.     As a direct and proximate result of Constellation and CBRE's unlawful discriminatory conduct in violation of the NYSHRL, Regueiro has suffered and continues to suffer monetary and/or economic harm for which he is entitled to an award of monetary damages and other relief.

73.     As a direct and proximate result of Constellation and CBRE's unlawful discriminatory conduct in violation of the NYSHRL, Regueiro has suffered and continues to suffer emotional harm, including but not limited to, stress, anxiety, mental anguish, the inability to sleep at night, loss of enjoyment of life, inconvenience, humiliation, indignity and more. For this emotional harm, Regueiro is entitled to an award of monetary damages and other relief.

**COUNT II**
**NYCHRL Sexual Harassment and Sexual Orientation Harassment**
**Regueiro v. Constellation and CBRE**

74.     Plaintiff hereby repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

75.     Defendants Constellation and CBRE discriminated against Regueiro on the basis of his gender and sexual orientation by subjecting Regueiro to sexual harassment and a hostile work environment, through the actions of Paul Albanese, and the inaction of Constellation and CBRE management and human relations personnel in the face of repeated complaints by Plaintiff.

76.     As a direct and proximate result of Constellation and CBRE's unlawful discriminatory conduct in violation of the NYCHRL, Regueiro has suffered and continues to

suffer monetary and/or economic harm for which he is entitled to an award of monetary damages and other relief.

77.     As a direct and proximate result of Constellation and CBRE's unlawful discriminatory conduct in violation of the NYCHRL, Regueiro has suffered and continues to suffer emotional harm, including but not limited to, stress, anxiety, mental anguish, the inability to sleep at night, loss of enjoyment of life, inconvenience, humiliation, indignity and more. For this emotional harm, Regueiro is entitled to an award of monetary damages and other relief.

**COUNT III**
**NYSHRL *Quid Pro Quo* Sex and Sexual Orientation Discrimination**
**Regueiro v. Constellation and CBRE**

78.     Plaintiff hereby repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

79.     Defendants Constellation and CBRE discriminated against Regueiro on the basis of sex and sexual orientation, through the actions of Albanese, and the inaction Constellation and CBRE after Regueiro's internal complaints to management and human resources personnel, by conditioning Regueiro's promotion to Executive Chef of North America, as well as Regueiro's ongoing employment as Regional Executive Chef, on Plaintiff engaging in a sexual relationship with Albanese.

80.     As a direct and proximate result of Constellation and CBRE's unlawful discriminatory conduct in violation of the NYSHRL, Regueiro has suffered and continues to suffer, monetary and/or economic harm, for which he is entitled to monetary damages and other relief.

81.     As a direct and proximate result of Constellation and CBRE's unlawful discriminatory conduct in violation of the NYSHRL, Regueiro has suffered and continues to

suffer emotional harm, including but not limited to, stress, anxiety, mental anguish, the inability to sleep at night, loss of enjoyment of life, inconvenience, humiliation, indignity and more. For this emotional harm, Regueiro is entitled to an award of monetary damages and other relief.

**COUNT IV**
**NYCHRL *Quid Pro Quo* Sex and Sexual Orientation Discrimination**
**Regueiro v. Constellation and CBRE**

82.     Plaintiff hereby repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

83.     Defendants Constellation and CBRE discriminated against Regueiro on the basis of sex and sexual orientation, through the actions of Albanese, and the inaction of Constellation and CBRE after Regueiro's internal complaints to management and human resources personnel, by conditioning Regueiro's promotion to Executive Chef of North America, as well as Regueiro's ongoing employment as Regional Executive Chef, on Plaintiff engaging in a sexual relationship with Albanese.

84.     As a direct and proximate result of Constellation and CBRE's unlawful discriminatory conduct in violation of the NYCHRL, Regueiro has suffered and continues to suffer, monetary and/or economic harm, for which he is entitled to monetary damages and other relief.

85.     As a direct and proximate result of Constellation and CBRE's unlawful discriminatory conduct in violation of the NYCHRL, Regueiro has suffered and continues to suffer emotional harm, including but not limited to, stress, anxiety, mental anguish, the inability to sleep at night, loss of enjoyment of life, inconvenience, humiliation, indignity and more. For this emotional harm, Regueiro is entitled to an award of monetary damages and other relief.

## COUNT V
### NYSHRL Unlawful Retaliation
### Regueiro v. Constellation and CBRE

86.    Plaintiff hereby repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

87.    Defendant CBRE, through the actions of Albanese, unlawfully retaliated against Regueiro when Albanese subjected Regueiro to a hostile work environment, sought to terminate Regueiro's employment, sought to replace Regueiro as Regional Executive Chef, retracted the promotion to Executive Chef of North America, all of which resulted in Regueiro being forced to quit working for Constellation and CBRE (constructive discharge), in direct response to Plaintiff's opposition to Albanese's sexual advances.

88.    Defendant Constellation retaliated against Regueiro by constructively discharging Regueiro when Constellation offered Regueiro the choice of demotion with less pay, or resignation, in direct response to Regueiro's internal complaints of sexual harassment and hostile work environment to Constellation management and human relations personnel.

89.    As a direct and proximate result of Constellation and CBRE's unlawful retaliatory conduct in violation of the NYSHRL, Regueiro has suffered and continues to suffer monetary and/or economic harm for which he is entitled to an award of monetary damages and other relief.

90.    As a direct and proximate result of Constellation and CBRE's unlawful retaliatory conduct in violation of the NYSHRL, Regueiro has suffered and continues to suffer emotional harm, including but not limited to, stress, anxiety, mental anguish, the inability to sleep at night, loss of enjoyment of life, inconvenience, humiliation, indignity and more. For this emotional harm, Regueiro is entitled to an award of monetary damages and other relief.

**<u>COUNT VI</u>**
**NYCHRL Unlawful Retaliation**
**Regueiro v. Constellation and CBRE**

91.     Plaintiff hereby repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

92.     Defendant CBRE, through the actions of Albanese, unlawfully retaliated against Regueiro when Albanese subjected Regueiro to a hostile work environment, sought to terminate Regueiro's employment, sought to replace Regueiro as Regional Executive Chef, retracted the promotion to Executive Chef of North America, all of which resulted in Regueiro being forced to quit working for Constellation and CBRE, in response to Plaintiff's opposition to Albanese's sexual advances.

93.     Defendant Constellation retaliated against Regueiro by constructively discharging him when Constellation offered Regueiro the choice of demotion with less pay, or resignation, in direct response to Regueiro's internal complaints of sexual harassment and hostile work environment to Constellation management and human relations personnel.

94.      As a direct and proximate result of Constellation and CBRE's unlawful retaliatory conduct in violation of the NYCHRL, Regueiro has suffered and continues to suffer monetary and/or economic harm for which he is entitled to an award of monetary damages and other relief.

95.     As a direct and proximate result of Constellation and CBRE's unlawful retaliatory conduct in violation of the NYCHRL, Regueiro has suffered and continues to suffer emotional harm, including but not limited to, stress, anxiety, mental anguish, the inability to sleep at night, loss of enjoyment of life, inconvenience, humiliation, indignity and more. For this emotional harm, Regueiro is entitled to an award of monetary damages and other relief.

## RELIEF REQUESTED

WHEREFORE, Plaintiff Regueiro demands judgment against Defendants Constellation and CBRE and seeks the following relief:

(a) Economic damages to the fullest extent permitted under the law, including but not limited to back pay and front pay;

(b) Compensatory damages to the fullest extent permitted under the law;

(c) Punitive damages to the fullest extent permitted under the law;

(d) Attorneys' fees and costs to the fullest extent permitted under the law;

(e) Interest to the fullest extent permitted under the law;

(f) Penalties to the fullest extent permitted under the law;

(g) Such other relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury for all issues of fact.


Dated: June 2, 2022                          Respectfully Submitted,

                                             /s/ James E. Goodley
                                             James E. Goodley (NY Reg. No. 5724083)
                                             Ryan P. McCarthy*
                                             GOODLEY MCCARTHY
                                             1650 Market Street, Suite 3600
                                             Philadelphia, PA 19103
                                             Telephone: (215) 394-0541
                                             james@gmlaborlaw.com
                                             ryan@gmlaborlaw.com

                                             *Attorneys for Plaintiff*
                                             *\* Pro Hac Vice Application to be Filed*